**Mark Choate, Esq.**
CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, Alaska 99801
Telephone: (907) 586-4490
Fax: (206) 423-9705
e-mail: mark@choatelawfirm.com

*Attorney for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO AT GRAND JUNCTION

CIVIL ACTION NO._____

EILEEN M. WALSH, individually and
LAZARO M. SANDOVAL, individually

       Plaintiffs,

v.

ALTITUDE OUTDOOR ADVENTURES, LLC, a Colorado limited liability company,
E&C PATTERSON INVESTMENTS, LLC, a Colorado limited liability company,
WHRENCO LLC, a Colorado limited liability company,
JOSHUA PATTERSON, individually,
CHRIS WHREN, individually, and
JOHN DOES 1 - 3, whose true names are unknown,

       Defendants.

---

## COMPLAINT AND JURY CLAIM

## I.     SUBJECT MATTER JURISDICTION

1.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§

1332(a) and 1332(c)(1) insofar as complete diversity of citizenship exists

between Plaintiff and Defendant and the amount in controversy, exclusive of

interest and costs, is in excess of $75,000.00.

## II.     VENUE AND PERSONAL JURISDICTION

2.     Venue is proper and personal jurisdiction exists in the 11th Judicial District

of the United States District Court for the District of Colorado pursuant to D.C.

COLO.L.CivR. 3.1, 28 U.S.C. §§ 1391(a)(2), 1391(b)(1) and (c)(2) and the Due

Process Clause of the Fourteenth Amendment to the United States Constitution

since Plaintiffs reside in Los Angeles, California, and at all times relevant

Defendants Altitude Outdoor Adventures, LLC, E&C Patterson Investments, LLC

and WhrenCo LLC were incorporated and transacted business within the State of

Colorado and, specifically, within this judicial district. Individual defendants,

Joshua Patterson, Chris Whren and on information and belief, John Does 1 – 3,

were residents of the State of Colorado and lived within this. judicial district

3.     Defendants are found within Colorado and transact business within

Colorado. They own, use or possess property or an interest therein within

Colorado and contracts for services and adventure to be rendered and for materials

to be furnished within Colorado, all within the context of Fed.R.Civ.P. 4(k)(1)(A) and C.R.C.P. 4(e)(4).

4.      All of such activities occur within the U.S. District Court for the District of Colorado.  Grand Junction is the closest courthouse.

### III.    FACTS COMMON TO ALL COUNTS

5.   Plaintiff, Eileen Mary Walsh (Walsh), resides in Los Angeles, California and is a citizen and resident of that state.

6.    Plaintiff, Lazaro M. Sandoval (Sandoval), is the husband of Plaintiff Walsh, resides in Los Angeles, California and is a citizen and resident of that state.

7.    Defendant Altitude Outdoor Adventures, LLC (AOA) is incorporated in the State of Colorado and has its principal place of business in Delta, Colorado and thus is a citizen of the State of Colorado within the context of 28 U.S.C. §§1332(a) and 1332(c)(1). (AOA has failed to comply with Colorado reporting requirements since August 1, 2021, and is listed as "delinquent" on the Colorado Secretary of State's website).

8.    Defendant E&C Patterson Investments, LLC (E&C) is incorporated in the State of Colorado and has its principal place of business in Cedaredge, Colorado and thus is a citizen of the State of Colorado within the context of 28 U.S.C.

§§1332(a) and 1332(c)(1). E&C is a 75% member of Altitude Outdoor Adventures, LLC.

9.    Defendant Joshua Patterson resides in Cedaredge, Colorado and is a citizen of the State of Colorado within the context of 28 U.S.C. §§1332(a) and 1332(c)(1). He is the 100% member/owner of E&C Patterson Investments, LLC.

10.    Defendant WhrenCo LLC (WhrenCo) is incorporated in the State of Colorado and has its principal place of business in Cedaredge, Colorado and thus is a citizen of the State of Colorado within the context of 28 U.S.C. §§1332(a) and 1332(c)(1). WhrenCo is a 25% member of Altitude Outdoor Adventures, LLC. (WhrenCo has failed to comply with Colorado reporting requirements since July 1, 2020 and is listed as "delinquent" on the Colorado Secretary of State's website).

11.    Defendant Chris Whren resides in Cedaredge, Colorado and is a citizen of the State of Colorado within the context of 28 U.S.C. §§1332(a) and 1332(c)(1). He is a 100% member/owner of WhrenCo LLC.

12.    Complete diversity of citizenship exists between Plaintiffs and each of the Defendants.

13.    Before January 10, 2022, Defendant, AOA, entered into a Special Use Permit ("Special Use Permit") with the United States Forest Service ("USFS") to

use lands in the Grand Mesa National Forest for the purposes of conducting snowmobile excursions and other outdoor activities.

14.     At all times relevant, Defendant, AOA, owned and operated a snowmobile excursion business in the Grand Mesa National Forest pursuant to terms of the Special Use Permit and subject thereto.

15.     At all times relevant, Defendants, AOA, E&C, WhrenCo, Joshua Patterson and Chris Whren, and John Does 1 -3, were the agents of each other, and in performing the acts alleged herein each such Defendant was acting within the course and scope of such agency and was subject to and under the supervision and control of its co-Defendant and/or such Defendants were joint venturers in the ownership and operation of such snowmobile excursion business, and, in performing the acts alleged herein, each such Defendant was acting in furtherance of the joint venture and on behalf of its co-Defendant.

16.     John Does 1-3 are guides who led the snowmobile excursion tour on January 10, 2022.  On information and belief, they were employed, contracted, or otherwise worked for Defendants AOA, E&C, WhrenCO, Joshua Patterson and Chris Whren.  All actions they performed on January 10, 2022 related to this claim were in the course and scope of their employment and for the benefit of Defendants AOA, E&C, WhrenCo, Joshua Patterson and Chris Whren.  All actions they took in this matter were on behalf of their employers, and their

employers are responsible under the doctrine of *respondeat superior* for their conduct.

17.    At all times relevant, Defendants, AOA, E&C, WhrenCo, Joshua Patterson and Chris Whren, and their employees/agents John Does 1 -10, acted in concert with each other, in furtherance of a common plan or design and each is responsible for the tortious conduct of the other.

18.    At all times relevant hereto, all Defendants had substantial contacts with Colorado and derived substantial revenue from their sale of goods and services in Colorado.

19.    At all times relevant, Defendant, AOA, sold guided snowmobile tours in the Grand Mesa National Forest, which Defendant, AOA, knew or had reason to know would be offered to members of the public, including Plaintiff Walsh.

20.    At all times relevant, Defendant, AOA, advertised, sold and marketed the snowmobile guided tours directly to the general public without disclosure that the snowmobile guided tours were owned or operated by anyone other than AOA.

21.    On or about January 8, 2022, Plaintiff Walsh and her adult son had completed work on rental property she owned in Grand Junction, Colorado.

22.    At that time, Plaintiff searched online for a snowmobile excursion and found a website operated by AOA: https://altitudeoutdooradventures.com

23.    AOA advertised and affirmatively represented to the general public via the internet that "This guided tour is perfect for first-timers…" and "This tour is great for all levels of riding experience."

## Snowmobile Tours

### Altitude Outdoor Adventures

Experience the ultimate adventure the country has to offer at Altitude Outdoor Adventures in Cedaredge, Colorado on a Snowmobile Tour. All tours include digital photos and or videos at no additional charge as a keepsake of your adventure.

**Contact Us**

Enjoy the powder and the Adventure. This guided tour is perfect for first-timers and we can offer challenges for the more experienced riders. Learn along the way about various points of historical interest. Perfect for a family outing or even a date.



## Tour Details

**Pricing Information**

Prices are for Ski-doo 600 sleds.

Please call for price and availability of Ski-doo 850 sleds.

Enjoy a scenic ride on Grand Mesa. This tour is certain to satisfy your adventurous spirit.

This tour is great for all levels of riding experience. Book your adventure today!



### Single Rider Pricing

**4 Hour Guided** ———— *$150*

Double Rider: (16+ w/ valid DL) $175

**Book Now (4 Hour)**

**Contact Us**

24.     Prior to signing up and purchasing tickets from AOA for the snowmobile

tour, Plaintiff Walsh, informed the ticket sales employee at AOA in words or

substance, that she and her son lacked any experience in operating snowmobiles,

inquired about the safety of the snowmobile tour and its equipment and inquired

if she could purchase a private snowmobile tour for beginners.

25.     AOA's employee responded to Plaintiff Walsh, in words or substance, that

she did not have to worry about this particular tour, that it was appropriate for

inexperienced snowmobilers, that AOA would provide appropriate operating and

safety instruction training, would watch to make sure Plaintiff and her son were

safe, and that Plaintiff and her son would be provided with appropriate safety

equipment.

26.     Plaintiff and her son arrived at AOA's office base camp on January 10,

2022.

27.     Plaintiff and her son were informed they would be the only customers on

this trip and were introduced to three individuals who were identified as being

their snowmobile tour "guides".  These individuals are collectively referred to as

John Does 1 - 10.

28.     One of the snowmobile guides provided Plaintiff and her son with snow

suits, helmets and gloves.

29.    At the beginning of the tour, Plaintiff and her son expressly advised Defendants' employees/contractors/agents, in words or substance, that they were complete novices to snowmobiling.

30.    Defendants' guides provided very brief instructions to Plaintiff and her son about how to operate the snowmobiles which included how to start, stop and move forward as well as let others know you were stopping or slowing.

31.    Shortly after 10 a.m, on January 10, 2022, the guides instructed Plaintiff and her son to follow along behind them in a single line.

32.    The snowmobile line consisted of the lead snowmobile guide, followed by Plaintiff, her son, and then two snowmobile guides at the rear.

33.    During the tour, the guides would sometimes stop and instruct the Plaintiff and her son that they could drive their snowmobiles and explore in certain areas but were to not go in others because they were dangerous.  Plaintiff and her son followed those directions.

34.    At around 3:30 pm in the afternoon, the tour came upon a very large clearing.  The guides this time advised Plaintiff and her son they could drive around the clearing and said that "it was all flat".  Unlike the other stops, no warnings were given that there were any dangerous conditions.  This caused Plaintiff to believe that it was safe to operate her snowmobile in that area.

35.    Plaintiff then began to drive in the clearing.  She had only been operating her snowmobile for 10-15 minutes when without notice her snowmachine plunged over an embankment.

36.    The snowmobile flew ahead of Plaintiff.  Plaintiff tried to hold onto it but could not and fell backwards.  Plaintiff landed extremely hard at the base of the embankment and felt immediate pain in her lower back.

37.    Plaintiff Walsh immediately lost all feeling in her feet.  She screamed for help.

38.    Her son came to her aid.  No guides came as they had apparently gone somewhere else together and were not within sight or sound of Plaintiff or her son.

39.    As Plaintiff Walsh was clearly severely injured, her son went to look for the guides to respond to this emergency situation.

40.    It took approximately 20 minutes before her son was able to find the guides and return with them.

41.    Plaintiff was laying in the snow at the base of the embankment when the guides arrived. One of the guides asked Plaintiff to sit up.  When she was unable to sit up, he grabbed her hand and without notice, tried to pull her up.  Plaintiff experienced immediate severe pain and screamed in agony. The guide then lowered her back down onto the snow.

42.     While Plaintiff was laying in the snow in agony, she was informed that the guides had no radios, walkie talkies or other ways to communicate to obtain emergency assistance.

43.      As she became more and more cold, Plaintiff also was told that the guides had no emergency gear, no first aid equipment, or anything to wrap her in to keep her warm.

44.     With no way to communicate to request emergency assistance, one of the guides told Plaintiff he would go for help and left on his snowmobilve.

45.     That guide returned about 40 minutes later and told Plaintiff a helicopter was on the way.  However, the helicopter never came.

46.     As the temperature fell, the guides made a fire around Plaintiff to keep her warm.

47.     Sometime later that evening, an ambulance arrived at a hotel approximately 30 minutes away by snowmobile.

48.     A volunteer or EMT traveled to where Plaintiff Walsh was lying in the snow a backboard that was attached to a sled.    Plaintiff Walsh was then loaded onto the backboard and placed on the sled. She was then pulled on the sled behind a snowmobile for approximately 30 minutes to the ambulance which then took her to Delta County Memorial Hospital.

49.    Plaintiff was then med-evaced to St. Mary's Medical Center in Grand Junction because of catastrophic injury to her spine.

50.    As a direct and proximate consequence of Defendants and each of their, negligence, Plaintiff Eileen Walsh, has sustained, <u>inter alia</u>, serious injuries including multiple bone fractures, severe pain and mental anguish, the need for surgical interventions and hospitalizations, paralysis, loss of enjoyment of life, and other severe and permanent injuries and impairments.

51.    Plaintiff has to date incurred medical, hospital and other expenses proximately caused by Defendants' wrongful acts and omissions well in excess of $75,000.00.

52.    At all times relevant, Defendants, and each of them, had knowledge or reason to know of potential hazards and dangers posed to inexperienced snowmobile operators in allowing them to operate in an area with a known dangerous condition yet failed to take reasonable and prudent steps calculated to protect such inexperienced operators from harm, thereby proximately causing severe and permanent injury to Plaintiff.

53.    The jurisdictional amount established for filing this action is satisfied and Plaintiff has satisfied all necessary conditions precedent to its commencement.

## <u>COUNT I: NEGLIGENCE</u>

**(Plaintiff, Eileen Walsh v. Defendants, Altitude Outdoor
Adventures, LLC, E&C Patterson Investments, LLC, WhrenCo
LLC, Joshua Patterson and Chris Whren and John Does 1 - 10)**

54.    Comes now the Plaintiff, Walsh, and realleges and reaffirms all allegations

contained in paragraphs one (1) through fifty-three (53) above as if fully set forth

herein.

55.    Defendants sold and operated guided snowmobile tours and held

themselves out to be sellers and operators of said services..

56.    Defendants failed to exercise reasonable care in advertising and operating

their guided snowmobile services..

57.    Defendants knew or should have known that their guided snowmobile tours

were not suitable for novice snowmobilers and that such tours posed foreseeable,

and grave, potential hazards  given the steep terrain, and the novice snowmobilers

unfamiliarity with both snowmobiles and the terrain.

58.    Defendants knew or should have known that Plaintiff would rely upon the

directions of their guides, and that it was essential that the guides provide accurate

information regarding any potential hazards.

59.    Defendants  knew or should have known that injury could occur on one of

their guided excursions, and because the excursion was occurring outside of cell

phone range, that there needed to be adequate first aid supplies to respond to any

medical emergency, keep the injured person warm, and have a radio, walkie talkie or other device, that would allow for them to call for emergency assistance.

60. By Defendants' acts and omissions committed and omitted in their advertising and operation of guided snowmobile services, Defendants, and each of them, breached their duty of care to Plaintiffs, thereby proximately causing her serious and debilitating physical and other injuries to Walsh and loss of consortium to Sandoval.

61. At all times relevant, Defendants, and each of them, had a duty to the general public and to Plaintiff Walsh, specifically, to market and sell their guided snowmobile tour in such a manner so as not to make material misrepresentations regarding the nature and safety of the activity and, moreover, given Plaintiff Walsh's, inexperience in operating a snowmobile, and unfamiliarity with the terrain, they had a duty to, inter alia, provide accurate, prominent warnings and information as to dangerous conditions that existed. Defendants' guides affirmative representation that it was safe to explore the area where Plaintiff Walsh was injured, and the guides' failure to stay nearby, duties which said Defendants breached and which breaches proximately caused severe and permanent bodily and other injury to the Plaintiff, Walsh.

62. At all times relevant, Defendants had a duty to the general public and to Plaintiff, Walsh, specifically, to provide adequate instructions regarding the use

and operation of the snowmobiles they provided to customers, including Plaintiff, a duty which said Defendants breached and which breach proximately caused severe and permanent bodily and other injury to the Plaintiff, Walsh.

63.     At all times relevant, Defendants had a duty to the general public and to Plaintiff, Walsh, specifically, to provide warning of dangerous conditions in the terrain, a duty which said Defendants breached and which breach proximately caused severe and permanent bodily and other injury to the Plaintiff, Walsh.

64.     At all times relevant, Defendants had a duty to the general public and to Plaintiff, Walsh, specifically, to stay close enough to Walsh, a novice snowmobiler, to keep her safe from dangerous conditions unknown to her, a duty which said Defendants breached and which breach proximately caused severe and permanent bodily and other injury to the Plaintiff, Walsh.

65.     At all times relevant, Defendants had a duty to the general public and to Plaintiff, Walsh, specifically, to have a way to call for emergency assistance and to provide first aid supplies and ways to keep Plaintiff Walsh warm, a duty which said Defendants breached and which breach proximately caused severe and permanent bodily and other injury to the Plaintiff, Walsh.

66.     Defendants foresaw the risks of harm to Plaintiff, Walsh, as a novice snowmobile operator yet took no steps reasonably calculated to fully convey to or

to adequately warn Plaintiff of the nature, extent and severity of the risks of harm or to adequately instruct her on the use of the snowmobile.

67.    On and prior to January 10, 2022, Defendants were negligent insofar as they, inter alia:

    i.    advertised and represented that the subject snowmobile tour was suitable for novice snowmobilers, such as Plaintiff, Walsh;

    ii.    failed to provide adequate training to their agents and employees who were operating the snowmobile tours;

    iii.    failed to provide to their agents and employees communications equipment to call for emergency assistance;

    iv.    failed to provide proper instruction to Plaintiff, Walsh, on how to operate a snowmobile;

    v.    failed to observe and evaluate Plaintiff Walsh's, ability to operate a snowmobile;

    vi.    failed to advise Plaintiff Walsh of the dangerous conditions that led to her injury, and wrongfully advised her that it was safe for her to operate her snowmobile in the location where she was injured;

    vii.    failed to have adequate first aid equipment including materials to keep Walsh warm after her injury;

    viii.    failed to train their guides to have proper first aid training which may have caused additional injury to Walsh when one of the guides attempted to lift Walsh after she fell;

    ix.    on information and belief failed to comply with the terms and conditions of the USFS Special Use Permit. This response will be amended once the Special Use Permit has been obtained in discovery.

68.     As a direct and proximate consequence of Defendants negligent acts and omissions, Plaintiff, Walsh, has undergone multiple surgeries, received ongoing treatment for spinal trauma, suffered permanent and disabling injuries (paralysis), and her physical and neurological functions have been substantially impaired, among other severe and debilitating injuries.  She has also suffered ongoing severe emotional distress and her preexisting depression has been aggravated.

69.     As a direct and proximate consequence of Defendants' negligent conduct, Plaintiff, Walsh, has been precluded from participating in normal life activities, to the extent she had been able to before her injuries, and will continue to be precluded from doing so in the future.

70.     As a direct and proximate consequence of the aforesaid negligence on the part of Defendants, Plaintiff, Walsh, has sustained severe and permanent injuries to her mind and body and has suffered and will continue to suffer in the future from physical pain and mental and emotional anguish and has been compelled to employ and will in the future be compelled to employ the services of doctors, medical personnel and facilities to care for and treat her and has incurred and will incur in the future substantial medical and other direct and consequential damages and expenses, all to her great damage.

71.     As a further direct and proximate result of the negligence, carelessness and recklessness of the Defendants, Plaintiff, Walsh, has lost the enjoyment of an

established course of life, direct and consequential damages and expenses, all to her great damage.

## COUNT II: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (Plaintiff, Eileen Walsh v. Defendants, Altitude Outdoor Adventures, LLC, E&C Patterson Investments, LLC, WhrenCo LLC, Joshua Patterson and Chris Whren and John Does 1 - 10)

72.     Come now the Plaintiff, Walsh, and realleges and reaffirms all allegations contained in paragraphs one (1) through one seventy-one (71) above as if fully set forth herein.

73.     The Defendants negligently inflicted severe emotional distress on Plaintiff Walsh.

74.     At all times relevant Defendants knew or should have known, that their negligent acts and omissions including, but not limited to, the inadequate instruction regarding snowmobile operation provided to Plaintiff, the incorrect and inadequate instruction that it was safe to operate her snowmobile in the area where she was catastrophically injured, the failure to have radios, walkie-talkies or other ways to call for emergency assistance, the failure to have first aid equipment, and blankets to keep Plaintiff warm, caused Plaintiff Walsh to sustain severe emotional distress.

75.    At all times relevant it was reasonably foreseeable to Defendants that their negligent acts and omissions would cause Plaintiff Walsh, as well as any reasonable person, to sustain severe emotional distress.

76.    As a direct, immediate and proximate consequence of Defendants' negligent acts and omissions which led to Plaintiff Walsh's fall and catastrophic injuries, and the failure to provide a timely, competent response afterwards, Plaintiff Walsh sustained serious, severe, and ongoing emotional distress.

77.    Defendants' conduct in having created and/or ignored conditions that led to Plaintiff Walsh's crash, is conduct that is atrocious and utterly intolerable in a civilized society.

78.    Defendants' conduct in having created or ignored conditions that led to Plaintiff Walsh's crash, was conduct that was extreme and outrageous and went beyond all possible bounds of decency.

79.    The emotional distress sustained by the Plaintiff Walsh was and continues to be of a type and kind that no reasonable person could be expected to endure without being cognizant of same.

80.    The emotional distress sustained by Plaintiff Walsh is both reasonable and justified under the circumstances.

81.    The Defendants' conduct has had a severe and traumatic effect upon Plaintiff Walsh's emotional tranquility since it caused and continues to cause severe emotional harm.

82.    The Defendants acted negligently and in a manner which was wholly indifferent to the likely and foreseeable impact of their conduct.

83.    As a direct, immediate and proximate consequence of Defendants' negligent, extreme and outrageous conduct, Plaintiff Walsh has experienced and continue to experience serious and severe emotional distress all to their great damage.

## COUNT III: LOSS OF CONSORTIUM
### (Plaintiff, Lazaro Sandoval v. Defendants, Altitude Outdoor Adventures, LLC, E&C Patterson Investments, LLC, WhrenCo LLC, Joshua Patterson and Chris Whren and John Does 1 - 10)

Comes now the Plaintiff, Lazaro Sandoval, and realleges and reaffirms all allegations contained in paragraphs one (1) through eighty-three  (83) above as if fully set forth herein.

84.    Lazaro Sandoval is the husband of Eileen Walsh.

85.    As a proximate cause of Defendants' negligent conduct that caused catastrophic injuries to Plaintiff Eileen Walsh, including paralysis, Plaintiff Sandoval has lost the moral support, affection, companionship, and sexual relations of his spouse.

86.    Because Eileen Walsh has been rendered paraplegic, she has been unable to assist in many of the activities of daily living that she formerly provided as well as engage in the normal activities of a wife and companion.

87.    As a result of Eileen Walsh being rendered paraplegic, Plaintiff Walsh's spousal consortium has been damaged, all to Plaintiff Sandoval's loss.

88.    Plaintiff Sandoval's losses exceed the jurisdictional minimums of this court of $75,000.00.

## COUNT IV: PUNITIVE DAMAGES
### (Plaintiff, Lazaro Sandoval v. Defendants, Altitude Outdoor Adventures, LLC, E&C Patterson Investments, LLC, WhrenCo LLC, Joshua Patterson and Chris Whren and John Does 1 - 10)

89.    Come now the Plaintiffs, Walsh and Sandoval, and reallege and reaffirm all allegations contained in paragraphs one (1) through eighty-eight (88) above as if fully set forth herein.

90.    At all times relevant the Defendants had knowledge of facts or intentionally disregarded facts that created a high probability of injury to the Plaintiffs.

91.    At all times relevant the Defendants deliberately proceeded to act with indifference to the high probability of injury to the Plaintiffs.

92.    The Defendants are guilty of actual fraud and actual malice.

93.    As a matter of law the Plaintiffs are entitled to recover punitive damages from Defendants, and from each of them.

WHEREFORE, Plaintiffs, Eileen Walsh and Lazaro Sandoval,

demand judgment against Defendants, Altitude Outdoor Adventures, LLC,

E&C Patterson Investments, LLC, WhrenCo LLC, Joshua Patterson and

Chris Whren and John Does 1 - 3) jointly and severally, for:

    a.  General damages;

    b.  Special damages;

    c.  Punitive damages;

    d.  Prejudgment and Postjudgment Interest;

    e.  Costs;

    f.  Expenses;

    g.  Attorneys' fees as allowed by law; and

    h.  For such other and further relief as this Honorable Court deems

       meet and just.

## **JURY CLAIM**

The Plaintiffs, Eileen Mary Walsh and Lazaro M. Sandoval, demand a

trial by jury on all issues so triable.

DATED this 15th day of December, 2023.

By: _/s/ Mark Choate, Esq.___
Mark Choate, Esq.
CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, AK 99801

(907) 586-4490
Fax: (206) 424-9705
Email: mark@choatelawfirm.com
Attorney for Plaintiffs Walsh & Sandoval

Plaintiffs' Addresses

Eileen Mary Walsh
12886 Louvre
Pacoima, CA 91331

Lazaro M. Sandoval
12886 Louvre
Pacoima, CA 91331